# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:16-CR-215** |
| | : | |
| v. | : | **(Chief Judge Conner)** |
| | : | |
| **CHRISTIAN HOGAN,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Defendant Christian Hogan ("Hogan") moves the court to suppress statements he made during searches of two different apartments on September 23, 2015, and February 26, 2016, respectively. (Doc. 40). For the following reasons, the court will deny Hogan's motion.

## I. Factual Background and Procedural History[1]

As a threshold matter, the court notes that the Honorable William W. Caldwell previously disposed of several of the claims in Hogan's motion to suppress. (See Docs. 47 and 48). In doing so, Judge Caldwell provided a detailed recitation of the pertinent facts, (see Doc. 47 at 1-6), familiarity with which is presumed.

The motion to suppress arises out of execution of two search warrants. The first warrant was executed on September 23, 2015, at 327 East Philadelphia Street, 1st Floor Apartment, York, Pennsylvania. The second was executed on February 26, 2016, at 766 West Market Street, 2nd Floor, Apartment 4, York, Pennsylvania.

---

[1] The factual narrative derives from testimonial and documentary evidence adduced during a February 16, 2018 suppression hearing in this matter, together with several exhibits attached to the parties' briefing. The court reporter has provided the court with an unofficial transcript of the suppression hearing. Citations thereto are abbreviated as "2/16/18 Hr'g Tr." Exhibits admitted during the suppression hearing are cited as "2/16/18 Hr'g Gov't Ex."

Search of the East Philadelphia Street apartment resulted in seizure of raw heroin, various drug paraphernalia, a loaded revolver, and $2,424.00 in cash.  Search of the West Market Street apartment resulted in seizure of heroin, various drug paraphernalia, a semi-automatic handgun, and $2,440.00 in cash.  During execution of each search warrant, Hogan was taken into police custody and questioned, at which time he allegedly made incriminating statements.

On August 3, 2016, a federal grand jury returned a nine-count indictment (Doc. 1) charging Hogan with various drug and firearm offenses.  Hogan entered a plea of not guilty to all counts in the indictment. (Doc. 10).

Hogan filed a motion to suppress physical evidence and oral statements obtained by officers during the searches of both apartments.  In moving to suppress physical evidence, Hogan argued that applications and affidavits of probable cause used to secure the search warrants were facially deficient.  In moving to suppress oral statements made during the searches of the apartments, Hogan raised two assertions: (1) that statements were obtained as the fruit of the allegedly illegal searches of the apartments; and (2) that he made statements after being detained and interrogated without being given, and without having waived, his Miranda rights.

On December 12, 2017, Judge Caldwell issued a memorandum (Doc. 47) and order (Doc. 48) regarding Hogan's motion to suppress. Finding that Hogan's claims involving search warrant applications and affidavits of probable cause lacked merit, (see Doc. 47 at 11-19), Judge Caldwell denied Hogan's motion to suppress as to physical evidence seized from both apartments.

In addressing Hogan's claims about oral statements, Judge Caldwell noted, in relevant part, as follows:

> The parties dispute whether [Hogan] was read his Miranda rights prior to being interviewed during each search. [Hogan] categorically asserts that he was not read his Miranda rights prior to being interrogated, nor did he waive them. [Hogan's] assertion, however, is directly contradicted by the officer-prepared incident reports pertaining to each search, in which Officers indicated that they read [Hogan] his Miranda rights and that he understood them. Given these facts, we find that the Miranda issue raised involves a matter of credibility for which an evidentiary hearing is required.

(Id. at 21).[2]

On January 17, 2018, this case was reassigned from Judge Caldwell to the undersigned due to Judge Caldwell's retirement. The court held an evidentiary hearing on February 16, 2018. (Doc. 49). During the hearing, the Government presented the testimony of four witnesses: (1) Detective Adam Bruckhart; (2) Trooper Sean Wolfe; (3) Detective Scott Nadzom; and (4) Officer Clayton Glatfelter.

The first witness to testify was Detective Bruckhart, who had participated in the September 23, 2015 execution of the search warrant at the East Philadelphia Street apartment. Detective Bruckhart testified that officers entered the East Philadelphia Street apartment and found Hogan in the front bedroom. Hogan was handcuffed, searched, and taken into the kitchen. (2/16/18 Hr'g Tr. 4:18-5:15). Immediately after Hogan was relocated to the kitchen, Detective Bruckhart

---

[2] Although Judge Caldwell found that an evidentiary hearing on the Miranda issue was warranted, he rejected Hogan's assertion that oral statements were the fruit of illegal searches. Specifically, Judge Caldwell stated, "Because we have already concluded that the searches were lawful, we find that the statements were not obtained as the fruit of illegal searches, and we need not analyze this claim in depth." (Doc. 47 at 21).

3

provided Hogan with his Miranda rights. (Id. at 7:15-16).  Specifically, Detective

Bruckhart testified:

> In this case I explained that we had a search warrant for his residence that we are about to be searching for drugs, and I explained that he had the right to remain silent, anything that he said could be used against him in a court of law.  I explained that he had the right to the presence of an attorney prior to any questioning.  If he couldn't afford an attorney one would be appointed free of charge, and if he decided to answer our questions he could stop at any time.  Then I asked him if he understood, and he verbally acknowledged that he did.

(Id. at 6:15-23).  Detective Bruckhart did not ask Hogan to sign a waiver of his

Miranda rights.  (Id. at 15:12-14, 16:16-18).

Detective Bruckhart and Trooper Wolfe interviewed Hogan for about twenty to thirty minutes.  (Id. at 8:25-9:1).  Hogan purportedly made various incriminating statements while being interviewed.  Detective Bruckhart took "bullet point" notes regarding Hogan's statements, but Hogan refused to sign the notes because he was afraid they would get him into trouble.  (Id. at 9:10-18; see 2/16/18 Hr'g Gov't Ex. 3). Detective Bruckhart testified that no audio recordings were made because he believed it would have been a violation of Pennsylvania wiretap laws to do so without Hogan's permission.  (2/16/18 Hr'g Tr. 18:12-19:1).

Trooper Wolfe, who also participated in the September 23, 2015 search of East Philadelphia Street apartment, confirmed Detective Bruckhart's account.  He stated that he was present in the kitchen when Detective Bruckhart read Hogan his Miranda rights.  (Id. at 22:6-7).  Trooper Wolfe recalled that Detective Bruckhart asked Hogan if he understood his Miranda rights and that Hogan had responded affirmatively.  (Id. at 22:10-15).  Trooper Wolfe was also present for the ensuing

4

interview with Hogan and, like Detective Bruckhart, he recalled that Hogan had made various incriminating statements. (See id. at 22:16-23:1).

The third witness to testify was Detective Nadzom, who participated in the February 26, 2016 search of the West Market Street apartment. Detective Nadzom attested that when he and other "entry team" officers entered the West Market Street apartment, they encountered Hogan in the living room area and placed him in handcuffs. (Id. at 30:12-17, 31:2-17). Detective Nadzom testified that he provided Hogan with a verbal Miranda warning. (Id. at 31:21-32:1). Specifically, Detective Nadzom explained:

> I told [Hogan] that he had a right to remain silent, anything he said would be used against him in a court of law, he had the right to an attorney, if he couldn't afford an attorney one would be appointed to him free of [charge] prior to any questioning. I advised him that if he did make a statement he could stop at any time, and then I asked him if he understood his rights and he indicated that he did.

(Id. at 32:7-13). Detective Nadzom did not ask Hogan to sign a waiver of his rights, nor did Hogan explicitly state that he desired to waive those rights. (See id. at 35:10-36:3). Hogan proceeded to make incriminating statements to Detective Nadzom. (Id. at 32:14-33:1). Another officer, Officer Glatfelter, subsequently conducted a more formal interview with Hogan, and Detective Nadzom was also present for parts of that interview. (Id. at 33:11-17, 45:12-14).

Officer Glatfelter corroborated much of Detective Nadzom's testimony. Officer Glatfelter recalled that Hogan was in the living room when officers first entered the apartment and that Hogan was handcuffed immediately upon the officers' entrance. (Id. at 37:24-38:15, 38:23-25). Officer Glatfelter was not in the

5

apartment when Detective Nadzom provided Miranda warnings to Hogan because he went back to his vehicle to retrieve the search warrant. (Id. at 39:4-8). When Officer Glatfelter returned, however, Detective Nadzom reported that he had read Hogan his rights. (Id. at 39:8-9). Officer Glatfelter took Hogan into the kitchen and asked him if he understood his Miranda rights as read by Detective Nadzom, and Hogan answered in the affirmative. (Id. at 39:9-13). Officer Glatfelter then began to question Hogan, who made various statements, some of which were incriminating. (See id. at 40:2-42:24).

Hogan provided no witness testimony, nor did he testify on his own behalf. After the government presented its witnesses, the parties engaged in brief oral argument. Hogan argued that because he did not explicitly waive his Miranda rights, and was not asked to waive them, his oral statements must suppressed. (Id. at 48:24-49:2). The government rejoined that because Hogan clearly received his Miranda rights on both occasions, and expressly indicated that he understood those rights, his subsequent decision to make verbal statements amounted to an effective waiver of those rights. (Id. at 49:14-18).

## II. Discussion

In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court held that before an individual is subjected to custodial police interrogation, he or she must be informed of certain rights. These rights include the right to remain silent and the right to have counsel—either appointed or retained—present during questioning. Id. at 444. An individual must also be warned that any statement he or she makes may be used as evidence against him or her. Id. Failure to apprise an individual of

6

his or her Miranda rights may render inadmissible any statements procured during the interrogation. Id.

A suspect may elect to waive his Miranda rights, provided that such waiver is "knowing, intelligent, and voluntary." Maryland v. Shatzer, 559 U.S. 98, 104 (2010). An effective waiver need not take the form of an explicit statement. See North Carolina v. Butler, 441 U.S. 369, 375-76 (1979). When one has a full understanding of his or her Miranda rights and acts in a manner inconsistent with the exercise of those rights, it can be presumed that the individual deliberately chose to relinquish the protections afforded by those rights. Berguis v. Thompkins, 560 U.S. 370, 385 (2010). For example, when an accused is provided with a Miranda warning and indicates an understanding of those rights, he or she implicitly waives the right to remain silent by subsequently making an uncoerced statement. Id. at 384.

The government presented testimony of multiple officers who clearly recalled that Hogan received a Miranda warning prior to both interrogations. With regard to the East Philadelphia Street search, Detective Bruckhart and Trooper Wolfe each separately confirmed that Detective Bruckhart advised Hogan of his Miranda rights. As for the West Market Street search, Detective Nadzom testified that he provided a Miranda warning to Hogan. And Officer Glatfelter testified that Hogan confirmed that he received and understood Detective Nadzom's Miranda warning. In addition to this testimony, officer reports prepared shortly after each of the searches indicate that Hogan was informed of his Miranda rights and that he understood them. (See 2/16/18 Hr'g Gov't Ex. 2 at 5; 2/16/18 Hr'g Gov't Ex. 5 at 4, 6).

Against this record evidence, Hogan offers only the blanket assertion that he did not receive Miranda warnings. Hogan provides no testimony of his own or any other countervailing evidence oppugning the officers' accounts. The court ascertains no reason to doubt the statements of multiple law enforcement officers who testified in very credible fashion. Accordingly, the court finds that Hogan received proper Miranda warnings prior to each of the interrogations at issue.

Assuming compliance with Miranda, Hogan asserts that officers never specifically asked him to waive his rights, nor did he explicitly state that he wished to waive those rights. As explained above, however, a waiver of one's Miranda rights need not be explicit. See Butler, 441 U.S. at 375-76. Rather, it is well settled that waiver can be inferred from an individual's actions and words. See Berguis, 560 U.S. at 384-85.

The record establishes that prior to both interrogations, Hogan received a complete recitation of his Miranda rights, and he verbally acknowledged his comprehension of those rights. Nonetheless, Hogan voluntarily responded to police questioning with various incriminating statements, and at no time did he explicitly assert his right to remain silent. He does not allege, nor does any evidence suggest, that the officers engaged in coercive or threatening tactics to obtain these statements. Because Hogan chose to make uncoerced statements despite knowing and understanding his right not to do so, the law permits the conclusion that Hogan knowingly, intelligently, and voluntarily waived his Miranda rights. In sum, absence of an explicit waiver of Miranda rights does not constitute a ground for suppressing Hogan's statements.

## III. **Conclusion**

The court will deny Hogan's motion (Doc. 40) to suppress as it pertains to the oral statements he made at both the East Philadelphia Street and West Market Street apartments on September 23, 2015, and February 26, 2016, respectively. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:     March 12, 2018