## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:16-CR-215** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **CHRISTIAN HOGAN (1),** | : | |
| | : | |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

Defendant Christian Hogan moves the court, through appointed counsel, for compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i). (See Doc. 98). Hogan asks the court to reduce his sentence to time served based on his medical condition and his concern regarding potential spread of the COVID-19 virus[1] at the Loretto Federal Correctional Institution ("FCI Loretto") where he is currently incarcerated. The government opposes compassionate release. For the reasons that follow, we will deny Hogan's motion.

## I.    <u>Factual Background & Procedural History</u>

A grand jury returned a nine-count indictment (Doc. 1) against Hogan in August 2016, charging him with multiple drug-trafficking and firearms offenses. (See id.) The parties requested and received a pre-plea criminal history calculation to facilitate plea negotiations. (See Docs. 28-29, 35-36). Hogan thereafter moved to

---

[1] The COVID-19 virus is also known as "severe acute respiratory syndrome coronavirus 2" and "SARS-CoV-2." *Naming the coronavirus disease (COVID-19) and the virus that causes it*, WORLD HEALTH ORG., https://www.who. int/emergencies/diseases/novel-coronavirus-2019/technical-guidance/naming-the-coronavirus-disease-(covid-2019)-and-the-virus-that-causes-it. We refer to the virus herein as "the COVID-19 virus" and to the disease it causes as "COVID-19."

suppress certain evidence and statements, (see Doc. 40), and the court denied

his motion after two separate evidentiary hearings, (see Docs. 47-48, 58-59).[2]  In

September 2018, Hogan pled guilty to possessing a firearm in furtherance of drug

trafficking in violation of 18 U.S.C. § 924(c)(1)(A) (Count 4), possessing with intent

to distribute heroin in violation of 21 U.S.C. § 841(a)(1) (Count 7), and possessing

a firearm and ammunition as a convicted felon in violation of 18 U.S.C. § 922(g)

(Count 8).  (Docs. 70, 73).

The probation office prepared a presentence report which detailed the

offense conduct and Hogan's extensive criminal history.  Because Hogan is a career

offender convicted of a Section 924(c) offense, the presentence report calculated a

Guidelines imprisonment range of 262 to 327 months' imprisonment.  (PSR ¶¶ 26,

57).  At sentencing, the court overruled Hogan's objection to the career-offender

designation, finding that it had been properly applied, but also agreed with Hogan

that a sentence within the range produced by that designation would be greater

than necessary to achieve the goals of sentencing.  The court varied downward to

sentence Hogan to 200 months' imprisonment, consisting of 140 months on Count 7

and 120 months on Count 8, to run concurrently, and a 60-month consecutive

mandatory minimum term on Count 4.  (See Doc. 91).  Hogan did not appeal his

conviction and sentence to the Third Circuit Court of Appeals.  He is currently

incarcerated at FCI Loretto with a projected release date of May 5, 2030.  See *Find*

---

[2] The late Judge William W. Caldwell presided over the first suppression hearing and issued the first suppression opinion.  (See Docs. 47-48).  On January 17, 2018, this case was reassigned to the undersigned following Judge Caldwell's retirement.

*an Inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (search for BOP Register Number "75377-067") (last visited July 27, 2020).

On June 5, 2020, Hogan filed a *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  (Doc. 98).  That same day, we appointed the Federal Public Defender to determine whether Hogan may be eligible for such relief and, if so, to file any appropriate motion or briefing on his behalf.  (Doc. 99).  On June 12, Hogan wrote the warden at FCI Loretto and asked the warden to consider seeking compassionate release on his behalf.  (See Doc. 100-2).  The warden denied that request six days later.  (Id.)  Appointed counsel thereafter filed a brief in support of Hogan's motion, (Doc. 100), and we promptly implemented an expedited briefing scheduled, (Doc. 101).  Hogan's motion is now fully briefed and ripe for review.  (See Docs. 100, 106, 108).

## II.   **Discussion**

Hogan asks the court to reduce his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act of 2018, § 603(b), Pub. L. No. 115-391, 132 Stat. 5194, 5239.  Section 3582(c)(1)(A)(i) allows the sentencing court to reduce a term of imprisonment if the court finds, after consideration of the Section 3553(a) factors, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).

Both the defendant and the Director of the Bureau of Prisons ("BOP") can move for compassionate release under Section 3582(c)(1)(A).  See id. § 3582(c)(1)(A).  But before a defendant can move the court directly, he must either "fully exhaust[]

all administrative rights to appeal a failure of the [BOP] to bring a motion on [his]

behalf" or wait for 30 days to lapse from the warden's receipt of a request that the

BOP file such a motion.  Id.  Hogan submitted his request to the warden on June

12, 2020, and the warden denied that request on June 18.  (See Doc. 100-2).  The

government does not contest that Hogan has satisfied the statutory exhaustion

requirements.[3]  We therefore turn to the merits of Hogan's motion.

---

[3] Both parties largely gloss over the issue of administrative exhaustion, (see
generally Docs. 100, 106), and Hogan construes that the government's failure to
raise the issue as a concession that the exhaustion requirement has been satisfied,
(Doc. 108 at 1).  We have no evidentiary indication that Hogan has fully exhausted
administrative remedies as contemplated by Section 3582(c)(1)(A).  See 18 U.S.C.
§ 3582(c)(1)(A); see also United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020) (citing
18 U.S.C. § 3582(c)(1)(A)); United States v. Petrossi, No. 1:17-CR-192, Doc. 133 at 2 &
n.1 (M.D. Pa. Apr. 28, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A) and collecting cases);
Petrossi, No. 1:17-CR-192, ___ F. Supp. 3d ___, 2020 WL 1865758, at *3-4 (M.D. Pa.
Apr. 14, 2020).  We have held that judges cannot waive this statutory exhaustion
requirement.  See Petrossi, 2020 WL 1865758, at *3-4.  And courts are divided on
whether the requirement is jurisdictional in nature, such that the government could
not waive it either.  Compare United States v. Alam, 960 F.3d 831, 833-34 (6th Cir.
2020) (nonjurisdictional); United States v. Johnson, No. 15-CR-125, __ F. Supp. 3d
__, 2020 WL 3041923, at *3-4 (D.D.C. May 16, 2020) (same); United States v. Nazer,
No. 18-CR-00783-2, __ F. Supp. 3d ___, 2020 WL 2197840, at *3-4 (N.D. Ill. May 6,
2020) (same); United States v. Haney, No. 19-CR-541, __ F. Supp. 3d __, 2020 WL
1821988, at *2-3 (S.D.N.Y. Apr. 13, 2020) (same), with United States v. Baye, No.
3:12-CR-00115-RCJ, __ F. Supp. 3d ___, 2020 WL 2857500, at *3-5 (D. Nev. June 2,
2020) (jurisdictional requirement); United States v. Johnson, No. CR RDB-14-0441,
__ F. Supp. 3d ___, 2020 WL 1663360, at *3-4 (D. Md. Apr. 3, 2020) (same).  Although
not specifically raised by the parties, we have a continuing obligation to consider
questions of subject-matter jurisdiction sua sponte.  See Fort Bend County v. Davis,
587 U.S. __, 139 S. Ct. 1843, 1849 (2019) (citing Gonzalez v. Thaler, 565 U.S. 134, 141
(2012)).  However, we need not resolve the issue in this case.  Assuming jurisdiction
arguendo, Hogan has not established that a reduction in sentence under Section
3582(c)(1)(A)(i) is warranted.  See Jordon v. Attorney Gen., 424 F.3d 320, 325 n.8 (3d
Cir. 2005) (citing, inter alia, Bowers v. NCAA, 346 F.3d 402, 425 (3d Cir. 2003), and
holding that when a jurisdictional limitation "has a statutory provenance," rather
than a constitutional one, courts may assume jurisdiction arguendo).

### A.    Extraordinary and Compelling Reasons

Hogan contends that his medical condition and resulting vulnerability to serious complications from COVID-19 establish extraordinary and compelling reasons to grant compassionate release.  He asserts that he has a bevy of medical ailments which place him at increased risk of serious illness or even death from COVID-19, and he argues that this risk is amplified by the increasing presence of the COVID-19 virus within the facility where he is incarcerated.  (See Doc. 100 at 1, 4-5).

Congress delegated responsibility for defining "extraordinary and compelling reasons" for compassionate release to the United States Sentencing Commission. See 28 U.S.C. § 994(t).  In Application Note 1 to Section 1B1.13 of the United States Sentencing Guidelines, the Commission identifies criteria for determining eligibility for a sentence reduction.[4]  See U.S.S.G. § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N 2018).  Eligible circumstances include terminal illness as well as "a serious physical or medical condition" or "deteriorating physical or mental health because of the aging process" if the impairment "substantially diminishes" the ability to provide self-care within a correctional facility and is one from which the defendant "is not expected to recover."  Id. at cmt. n.1(A)(i), (A)(ii)(I), (A)(ii)(III).  A defendant may

---

[4] We recognize that this policy statement has not been amended since passage of the First Step Act.  See United States v. Kelly, No. 3:13-CR-59, 2020 WL 2104241, at *7 (S.D. Miss. May 1, 2020) (quoting United States v. Perdigao, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020)).  We agree with those courts to observe that Section 1B1.13 still "provides helpful guidance" even if it is no longer controlling.  Id. (quoting United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019)).

also be eligible for an age-based reduction if he is 65 or older, is experiencing "serious deterioration in physical or mental health because of the aging process," and has served the lesser of 10 years or 75 percent of his term of imprisonment. Id. at cmt. n.1(B). The Application Note closes with a catchall, authorizing a reduction when the Director of the BOP identifies in a particular case "an extraordinary or compelling reason other than, or in combination with," the above. Id. at cmt. n.1(D).

The BOP has also developed internal criteria for addressing prisoner requests for compassionate release. Of the many considerations identified in the BOP's policy statement, the only criteria potentially applicable to Hogan are those concerning prisoners with a "debilitated medical condition." See FED. BUREAU OF PRISONS, PROGRAM STATEMENT 5050.50: COMPASSIONATE RELEASE/REDUCTION IN SENTENCE: PROCEDURES FOR IMPLEMENTATION OF 18 U.S.C. §§ 3582 AND 4205(G) at 5 (Jan. 17, 2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf. The statement provides that compassionate release should be considered for prisoners "who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover." Id. Specifically, the BOP will consider compassionate release if a prisoner is "[c]ompletely disabled, meaning the [prisoner] cannot carry on any self-care and is totally confined to a bed or chair; or [c]apable of only limited self-care and is confined to a bed or chair more than 50% of waking hours." Id.

Of course, neither the Sentencing Commission nor the BOP contemplated a deadly global pandemic when developing these criteria. Fortunately, the Third

Circuit Court of Appeals had an early opportunity to provide guidance to district courts facing an inrush of compassionate release motions.  In <u>United States v. Raia</u>, 954 F.3d 594 (3d Cir. 2020), issued on April 2, 2020, the court observed that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison . . . cannot independently justify compassionate release, especially considering BOP's statutory role and its extensive and professional efforts to curtail the virus's spread."  <u>Raia</u>, 954 F.3d at 597.[5]  Over the past few months, district courts in the pretrial and civil detention contexts likewise have opined that a generalized fear of the virus reaching a given institution is not a proper basis for release.  <u>See</u> <u>Ndir v. Doll</u>, No. 1:20-CV-705, ___ F. Supp. 3d ___, 2020 WL 2306761, at *5 (M.D. Pa. May 8, 2020) (Conner, C.J.) (collecting cases in civil immigration detainee context); <u>D.M. v. Barr</u>, No. 20-4031, 2020 WL 1969893, at *5 (D.N.J. Apr. 24, 2020) (same); <u>United States v. Anderson</u>, No. 1:19-CR-239, 2020 WL 1953612, at *4, 5 (M.D. Pa. Apr. 23, 2020) (same in pretrial detention context).  In other words, something more is required.

Hogan asserts that his various medical conditions and the presence of the COVID-19 virus within FCI Loretto supply the requisite "something more."  Hogan identifies current diagnoses of obesity, sarcoidosis, and prediabetes, and he reports

---

[5] The Third Circuit in <u>Raia</u> held that motions under Section 3582(c)(1)(A) cannot be brought directly in the court of appeals and that the defendant's failure to exhaust administrative remedies would render remand futile.  <u>See</u> <u>Raia</u>, 954 F.3d at 596-97.  Anything the court said about the merits of the motion, after its threshold jurisdictional determination, is arguably *dicta*.  We are nonetheless persuaded by and agree with the court's observations as to the availability of compassionate release during the COVID-19 pandemic.

having "a history of asthma, cellulitis, congestive heart failure, chronic obstructive pulmonary disease, diabetes mellitus, high cholesterol, hypertension, multiple myeloma, and renal insufficiency." (Doc. 100 at 1). Of Hogan's current medical conditions, the Centers for Disease Control and Prevention ("CDC") list only obesity—defined as a body mass index or BMI or 30 or higher—as a condition which places individuals at "increased risk of severe illness from COVID-19." *Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/ 2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last updated July 17, 2020). The guidance provides that individuals with Type 1 diabetes "might be at increased risk" from COVID-19, and that individuals with Type 2 diabetes "are at increased risk," but says nothing of individuals who are prediabetic. Id. Nor does the CDC's guidance speak to sarcoidosis (or any analogous disease) or suggest that having had a higher-risk condition in the past increases an individual's present risk. See id.

A February 2020 clinical encounter summary provided by counsel lists Hogan's weight at 450 pounds and calculates a BMI of 62.8. (See Doc. 103 at 34-35). Prison medical staff have indicated that Hogan "[n]eeds to lose an excessive amount of weight." (Id. at 58). With a BMI more than double that contemplated by the CDC's guidance, Hogan clearly qualifies as a person who is at increased risk of severe illness from COVID-19. See *Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-

higher-risk.html.  Indeed, Hogan falls into the "extreme" and "severe" obesity range, defined by the CDC as having a BMI of 40 or above.  See *Overweight & Obesity: Defining Adult Obesity*, CTRS. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/obesity/adult/defining.html (last visited July 27, 2020).

The risk for someone like Hogan is particularly acute in an institution where positive cases are on the rise.  When the government filed its response on July 21, zero prisoners and one staff member had tested positive for the virus. (See Doc. 106 at 20).  By the time Hogan's counsel filed his reply on July 23, two prisoners had tested positive.  (See Doc. 108 at 1 n.1).  Today, the BOP reports 19 positive prisoners and six positive staff members with no one yet listed as recovered.  See *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www. bop.gov/coronavirus/ (select "Full breakdown and additional details") (last updated July 29, 2020, 3:00 p.m.).  With 518 tests pending, it is reasonable to assume these numbers will rise.  See id. (select "Learn more about the data and view individual facility stats").  This reality does not mirror dire situations like those that previously occurred at FCI Oakdale I, which experienced inordinately high infection and death rates in comparison to other facilities, justifying compassionate release.  See Kelly, 2020 WL 2104241, at *7 & nn.16-17 (citations omitted).  Yet for someone who is morbidly obese, any notable uptick in cases is cause for medical concern.

We do not discount the significant efforts undertaken by the BOP to stem the tide of infections in federal correctional institutions throughout the country.  The BOP has suspended most visitation, implemented screening measures for staff and prisoners, and limited contractor visits to essential services.  See *BOP Implementing*

*Modified Operations*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ covid19_status.jsp.  Prisoner movement between facilities has been "suspended with limited exceptions," and movement within facilities is restricted as well, with exceptions for mental health and medical treatment; certain programs and services; and access to commissary, laundry, showers, and telephones.  Id.  But for someone like Hogan, whose recommended treatment includes increasing physical activity, (see Doc. 103 at 39, 58), these restrictions may be problematic.  Indeed, the CDC's "actions to take" for obese individuals during the COVID-19 pandemic—"[f]ollow your healthcare provider's recommendations for nutrition and physical activity, while maintaining social distancing precautions"—are difficult if not impossible to abide in the current prison environment.  See *Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

Hogan is uniquely at risk for severe illness from COVID-19, and the BOP's nationwide institutional movement restrictions are uniquely detrimental to Hogan's health.  It appears that Hogan's extreme obesity qualifies as a serious physical medical condition from which he is not expected to recover and which, given present circumstances, substantially diminishes Hogan's ability to provide self-care.  See U.S.S.G. § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N 2018).  Thus, Hogan has arguably shown "extraordinary and compelling reasons" that would allow the court to grant compassionate release.

**B.     Section 3553(a) Factors**

Our analysis must still be informed by the Section 3553(a) factors,[6] and

any reduction must be "consistent with applicable policy statements issued by

the Sentencing Commission."  <u>See</u> 18 U.S.C. § 3582(c)(1)(A); <u>see also</u> <u>United States</u>

<u>v. Pawlowski</u>, No. 20-2033, ___ F.3d ___, slip op. at 5-6 & n.6 (3d Cir. July 24, 2020)

(quoting 18 U.S.C. § 3582(c)(1)(A)).  At sentencing just 16 months ago, we carefully

balanced the salient Section 3553(a) factors to impose a sentence that reflected the

seriousness of the offense conduct, promoted respect for the law, achieved adequate

deterrence, protected the public, and provided appropriate educational, vocational,

and rehabilitative treatment to Hogan.  <u>See</u> 18 U.S.C. § 3553(a)(2).  We find that the

facts and circumstance of this case—in particular, the nature of Hogan's offense

conduct; his criminal history and high likelihood of recidivism; and the significant

variance already granted—require that Hogan's existing sentence remain intact.

Hogan's conduct in this case was serious.  He was arrested in September

2015 after selling .186 and .14 grams of heroin to an undercover police officer in two

separate transactions.  (PSR ¶ 4).  A subsequent search of Hogan's home revealed

---

[6] The Section 3553(a) factors are (1) "the nature and circumstances of
the offense and the history and characteristics of the defendant"; (2) "the need
for the sentence imposed . . . to reflect the seriousness of the offense, to promote
respect for the law, and to provide just punishment for the offense; . . . to afford
adequate deterrence to criminal conduct; . . . to protect the public from further
crimes of the defendant; and . . . to provide the defendant with needed educational
and vocational training, medical care, or other correctional treatment in the most
effective manner"; (3) "the kinds of sentences available"; (4) the kinds of sentence
and sentencing range recommended by the United States Sentencing Guidelines;
(5) pertinent policy statements issued by the United States Sentencing Commission;
(6) "the need to avoid unwarranted sentencing disparities" among similarly situated
defendants; and (7) the need for restitution.  18 U.S.C. § 3553(a).

one gram of heroin, nearly $2,000 in cash, drug packaging materials, and a Smith and Wesson .38 Special handgun.  (Id. ¶ 5).  Hogan told investigators that he had been robbed of 150 grams of heroin earlier that week and had acquired the firearm for personal protection.  (Id. ¶ 6).  After being released on bail, Hogan resumed his criminal activities and acquired another firearm.  (See id. ¶ 8).  In February 2016, just five months after his release on bail, authorities conducted three controlled purchases of heroin from Hogan.  (Id.)  Officers executed a second search warrant at Hogan's home and recovered 34 grams of heroin in addition to drug packaging materials, a stolen 9mm handgun, and 33 rounds of ammunition.  (Id. ¶ 8).

Hogan's likelihood of recidivism was—and remains—the principal aggravating factor in our Section 3553(a) calculus.  Hogan is 39 years old with a criminal record spanning more than 25 years.  He has accumulated convictions for robbery (age 14), possession of crack cocaine (age 16), attempted criminal sale of cocaine (age 17), criminal sale of cocaine (age 18), attempted possession of a forged instrument (age 23), possession of marijuana and heroin (age 26), and delivery of crack cocaine, conspiracy to deliver crack cocaine, and possession with intent to distribute crack cocaine (age 27).  (See id. ¶¶ 28-34).  He has been sentenced to a term of imprisonment on four separate occasions, (see id. ¶¶ 30, 31, 32, 34), with apparently no deterrent effect.  Indeed, he committed part of the instant offense while released on bail following an arrest for the same offense conduct.  (See id. ¶¶ 7-8).  He also has a history of violating parole.  (See id. ¶ 31).  We thus reject counsel's suggestion that "there is no reason to think that Mr. Hogan poses any risk of recidivism," (Doc. 100 at 6), which is squarely refuted by Hogan's conduct in this

case and others.  The existing 200-month sentence was designed with the goal of

(hopefully) succeeding where lighter sentences have failed in deterring Hogan from

future criminal conduct.

A substantial term of imprisonment is also necessary to provide Hogan

with rehabilitative treatment.  Hogan has a long history of drug addiction.  (See

PSR ¶ 49).  At the time of his arrest, he was using three bags of heroin per day.  (Id.

¶ 49).  He has no work history and reported to the probation officer that, instead of

seeking employment, he supported himself by "doing the wrong thing."  (Id. ¶ 52).

At sentencing, we encouraged Hogan to participate in all rehabilitative, vocational,

and educational programming available to him during his term of imprisonment.

Such opportunities are vital to achieving the rehabilitative goals of sentencing and

reducing Hogan's likelihood of recidivism.  See 18 U.S.C. § 3553(a)(2)(B), (D).

Releasing Hogan prematurely would seriously undermine these objectives.

Accounting for good time, Hogan has almost 10 years remaining on his

approximately 16.5-year sentence.  See Pawlowski, slip op. at 7-8 (holding that time

remaining on sentence is one factor courts may consider in compassionate-release

analysis).  And Hogan has already received the benefit of a significant variance.  At

sentencing, the court varied downward by 62 months—more than 5 years—after

concluding that a sentence of 200 months would be sufficient but not greater than

necessary to achieve each of the above-discussed objectives.  To date, Hogan has served just 47.5 months of that 200-month sentence.[7]  (See Doc. 100 at 1).

As the above discussion reflects, Hogan's existing sentence was carefully crafted after weighing each of the applicable Section 3553(a) factors.  We are not unsympathetic to Hogan's concerns—or to any medically vulnerable prisoner's concerns—regarding COVID-19.  But those concerns cannot justify a reduction of the magnitude sought in this case.  For the many reasons articulated at sentencing and reiterated herein, we find that the Section 3553(a) factors strongly militate in favor of leaving Hogan's existing sentence intact.

## III.   **Conclusion**

The court will deny Hogan's motion (Doc. 98) for compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i).  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    July 29, 2020

---

[7] We respectfully disagree with the assertion of Hogan's counsel that "a sentence of 47 months is not far outside the range contemplated by federal law." (Doc. 100 at 5-6).  Hogan's Guidelines range was 262 to 327 months.  (PSR ¶¶ 26, 57). We varied downward by approximately 25% to impose Hogan's existing 200-month sentence.  A time-served sentence of 47 months would reflect a downward variance of *more than 82%* from the bottom end (and *more than 85%* from the top end) of the Guidelines range.